Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

United States District Court
Southern District of New York

7:20-cv-08718

Kari Warren, individually and on behalf of
all others similarly situated,

Plaintiff,

- against -

The Stop & Shop Supermarket Company
LLC,

Defendant

Class Action Complaint

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.   The Stop & Shop Supermarket Company LLC ("defendant") manufactures, distributes, markets, labels and sells graham crackers purporting to be sweetened primarily with honey and containing a predominant amount of whole grain graham flour under their Stop and Shop brand ("Products").

2.   The Products are available to consumers from defendant's retail stores and their online ordering services and are sold in boxes of 14.4 OZ (408g).

3.   The relevant representations include "Graham Crackers," "Honey," dark brown crackers, a honey dipper and copious amounts of honey on top of the crackers.

1



4.      The representations are misleading because despite the touted presence of honey and whole grain graham flour, the amount of these ingredients is less than consumers expect.

5.      The Product's representations convey that honey is the exclusive, primary and/or most significant sweetener in the Products.

6.      However, the Product is sweetened primarily with sugar and contains only a miniscule amount of honey.

7.      In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar

2

we eat isn't found naturally in food but is added during processing or preparation."[1]

8. The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[2]

9. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[3]

10. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

11. As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.

12. At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

13. In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

14. As another observer of the food industry explained in May, 2017: "[h]ealth concerns

---

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[2] Id.
[3] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[4] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[5] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.

and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year. . ."[6]

15.   Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

16.   The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[8]

17.   Surveys show "[c]onsumers rated honey at 73% 'better for you than sugar."[9]

18.   A survey highlighted in "Prepared Foods" magazine in 2018 noted that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey."[10]

19.   Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits."[11]

---

[6] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[7] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[8] Id.
[9] Id.
[10] Supra, Trends in Sugar Reduction and Natural Sweeteners.
[11] Brian Kennell, Healthy Food Trends Drive New Products, HuffingtonPost.com, October 1, 2015 updated December 6, 2017.

20.    Honey is a naturally occurring substance and, unlike sugar, contains nutrients such as vitamins, minerals, enzymes, and antioxidants.

21.    Honey has a lower glycemic index than sugar, causing slower fluctuations in blood glucose levels ("blood sugar") and therefore in insulin levels as well.

22.    Rapid spikes of blood sugar lead to quick spurts of energy followed by sharp declines characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

23.    Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

24.    Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

25.    The Product's ingredients, listed in descending order of predominance, reveal that "Sugar" is the predominant sweetening agent and "Honey" is least predominant.

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, CONTAINS 2% OR LESS OF: SALT, BAKING SODA, SOY LECITHIN, CALCIUM PHOSPHATE (LEAVENING), ARTIFICIAL FLAVOR, SODIUM SULFITE.

26.    By comparing the sugar profile of the Product with the sugar profile of honey, the amount of honey can be estimated slightly above 2%, which is consistent with its placement ahead of the "Contains 2 Percent or Less Of" statement on the ingredient list.

27.    The Product's name of "Graham Crackers – Honey" gives reasonable consumers the impression that whole grain graham flour is the primary flour ingredient used.

28.  Dictionaries confirm what reasonable consumers expect when it comes to a (honey) "graham cracker," defining it as "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[12]

29.  This whole grain content distinguishes a graham cracker from other crackers and cookies which are made with mostly white flour, also referred to as "enriched flour" because the refining process strips away all the nutrients which are then "added back."

30.  In whole grain flour, all three parts of the grain – bran, germ and endosperm – are used as opposed to white flour, which only uses the endosperm.

31.  Because the "Graham" in "Graham Crackers" refers to whole grain flour, reasonable consumers expect a food identified in this way to have more whole grains than if the main ingredient was enriched flour.

32.  However, the ingredient list reveals "Enriched Flour" is the main flour, indicated by its listing ahead of "Graham Flour."

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, CONTAINS 2% OR LESS OF: SALT, BAKING SODA, SOY LECITHIN, CALCIUM PHOSPHATE (LEAVENING), ARTIFICIAL FLAVOR, SODIUM SULFITE.

33.  The actual amount of whole grain graham flour in the Product is no greater than five grams out of the 31 grams in a serving.

34.  Surveys have shown that consumers increasingly seek products made with whole

---

[12] https://www.dictionary.com/browse/graham-cracker

grains because they are expected to contain, and do contain, more fiber than refined white flour.[13]

35.    The Product's name of "Graham Crackers" gives consumers the impression it contains more whole grain flour than it does.

36.    At least half of consumers expect that for every gram of whole grain per serving, there will be at least one gram of fiber.

37.    Two-thirds of consumers (67%) agree with the statement that whole grain foods are high in fiber.

38.    75% of consumers expect a product made with, or containing whole grains, will be at least a good source of fiber.

39.    The 2015 Dietary Guidelines for Americans recommended that at least half of all grains consumed be whole grains.[14]

40.    The FDA cautioned manufacturers against misleading consumers as to whole grain content of foods:[15]

> 7.    Question: Does the term "whole grain" mean the same as "100 percent whole grain"? If a product is labeled as "whole wheat bagel" or "whole wheat pizza," how much whole wheat should it contain? What is graham flour?
>
> Answer: FDA has not defined any claims concerning the grain content of foods. However, the agency has established standards of identity for various types of cereal flours and related products in 21 CFR Part 137, including a standard of identity for "whole wheat flour" (§ 137.200) and "whole durum flour" (§ 137.225). Graham flour is an alternative name for whole wheat flour (§ 137.200).
>
> Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole

---

[13] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.
[14] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[15] Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements," Docket No. 2006D-0066, ("Whole Grain Guidance").

grain." We recommend that products labeled with "100 percent whole grain" not contain grain ingredients other than those the agency considers to be whole grains.

41.     The FDA has warned companies against making misleading whole grain representations in a product name – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers" – where the products were predominantly white flour.[16]

42.     The Federal Trade Commission ("FTC") recognized that "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.[17]

43.     By highlighting the whole grain ingredient, "Graham" as part of the product name "Graham Crackers," defendant is impliedly highlighting the presence of nutrients associated with whole grains – fiber.[18]

44.     Reasonable consumers expect a product  represented with such "whole grain" claims to provide at least 10 percent (a good source) or above 20 percent (high) of the RDI (Reference Daily Intake) or the DRV (Daily Reference Value) of fiber.[19]

45.     However, the Products are not a good source of, nor high, in fiber, as the nutrition facts reveal the Product has 1g of fiber (4%).

46.     Consumers associate darker hues in grain products with the presence of a significant amount of whole grain ingredients.

47.     Though the Products contain honey purportedly for its sweetening effect, the honey

---

[16] CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat, Docket No. 93P-0227 (Jun. 25, 1993).
[17] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006
[18] 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.65.
[19] 21 C.F.R. § 101.54(b)-(c).

serves another purpose: imparting a darker color to a product which would be significantly whiter if based solely on the ratio of enriched flour to whole grain wheat, graham flour.

48.    According to W.K. Nip, the presence of "mostly reducing sugars in [honey's] sugar profile" causes it "[to] brown[s] easily during baking, adding a natural dark color to baked products such as bread, crackers, and other products. Chapter 7, "Sweeteners."

49.    The use of a small amount of honey contributes to consumers getting the misleading impression the Products contain more whole grain graham flour than is present.

50.    The branding and packaging of "Graham Crackers – Honey" is not accurate or justifiable on the basis that honey is expected to substantively contribute to the Product's nutritive value, in contrast to its presence in an amount more akin to a flavor.

51.    Product names can be misleading when they suggest one or more, but not all, of the key ingredients, like honey and whole grain graham flour, yet fail to disclose other more predominant ingredients like refined flour and basic sugar.

52.    Honey and whole grain graham flour are characterizing ingredients of the Product since they are touted on the front label.

53.    The labeling creates an erroneous impression that honey and whole grain graham flour are present in amounts greater than is the case.

54.    Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers.

55.    Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

56.    The amount and proportion of the characterizing components, honey and whole grain graham flour, have a material bearing on price and consumer acceptance of the Products because

9

consumers are willing to pay more for such Products.

57.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

58.    Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

59.    The Product contains other representations which are misleading and deceptive.

60.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.29 per box, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

61.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

62.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

63.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

64.    Plaintiff Kari Warren is a citizen of New York County, New York.

65.    Defendant is a Delaware limited liability company with a principal place of business in Quincy, Norfolk County, Massachusetts and is a citizen of Massachusetts. and upon information and belief, at least one member of defendant is not a citizen of New York.

66.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods

within New York.

67.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

68.   A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

69.   Plaintiff Kari Warren is a citizen of New City, Rockland County, New York.

70.   Defendant The Stop & Shop Supermarket Company LLC is a Delaware limited liability company with a principal place of business in Quincy, Massachusetts, Norfolk County.

71.   Defendant operates close to 500 Stop & Shop supermarkets in the mid-Atlantic states and New England.

72.   During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations described herein.

73.   Plaintiff purchased the Product numerous times during 2018, 2019 and 2020 at defendant's locations at 180 N Main St, New City, NY 10956 and 32 S Middletown Rd, Nanuet, NY 10954.

74.   Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and expected it to have more whole grain and honey than it did.

75.   Plaintiff was deceived by and relied upon the Product's deceptive labeling.

76.   Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

11

77.   The Product was worth less than what Plaintiff paid for it and Class members would not have paid as much as they have for the Product absent Defendant's false and misleading statements and omissions.

78.   Plaintiff lost money as a result of Defendant's unlawful behavior.

79.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's label is lawful and consistent with the Product's ingredients.

<u>Class Allegations</u>

80.   The classes will consist of all purchasers of the Products in New York during the applicable statutes of limitations.

81.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

82.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

83.   Plaintiff is an adequate representative because her interests do not conflict with other members.

84.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

85.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

86.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

87.   Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

88.   Plaintiff incorporates by reference all preceding paragraphs.

89.   Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

90.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

91.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

92.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products were primarily if not exclusively sweetened with honey instead of sugar and that whole grain graham flour instead of white enriched flour was the exclusive or at least the predominant flour ingredient.

93.   Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

94.   Plaintiff incorporates by reference all preceding paragraphs.

95.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

96.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products were primarily if not exclusively sweetened with honey instead of sugar and that whole grain graham flour instead of white enriched flour was the exclusive or at least the predominant flour ingredient.

97.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

98.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

99.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

100.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

101.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

102.   Plaintiff incorporates by reference all preceding paragraphs.

103.   The Products were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

104.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

105.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

106.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

14

107.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

108.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

109.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

110.   Plaintiff incorporates by references all preceding paragraphs.

111.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products were primarily if not exclusively sweetened with honey instead of sugar and that whole grain graham flour instead of white enriched flour was the exclusive or at least the predominant flour ingredient.

112.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.

113.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

114.   Plaintiff incorporates by reference all preceding paragraphs.

115.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

15

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 19, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-08718
United States District Court
Southern District of New York

Kari Warren, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Stop & Shop Supermarket Company LLC,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 19, 2020

/s/ Spencer Sheehan
Spencer Sheehan