IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kari Warren, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>The Stop & Shop Supermarket Company LLC,<br><br>Defendant | Case No. 7:20-cv-08718-NSR<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. The Stop & Shop Supermarket Company LLC ("Defendant") manufactures, distributes, markets, labels and sells crackers purporting to be sweetened primarily with honey and made mainly from whole grains, under their Stop and Shop brand ("Graham Crackers – Honey" or "Product").

2. The relevant representations include "Graham Crackers," "Honey," dark brown crackers, a honey dipper and a substantial amount of honey on the crackers.

I.  Honey is Misrepresented as Main Sweetener

3. The representations convey that honey is the primary and/or a significant source as a sweetener.

1



4. However, the Product is sweetened primarily with sugar and contains a miniscule amount of honey.

A. <u>Sugar Disfavored as Sweetener</u>

5. In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[1]

6. The NIH noted further: "[s]everal studies have found a direct link between excess

---

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.

sugar consumption and obesity and cardiovascular problems worldwide."[2]

7. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[3]

8. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

9. As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.

10. At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

11. In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

12. As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently

---

[2] *Id.*
[3] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[4] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[5] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.

featured on products in the coming year. . ."[6]

13. Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

14. The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[8]

B. Consumer Preference for Products Sweetened with Honey Instead of Sugar

15. Surveys show "[c]onsumers rated honey at 73% 'better for you than sugar.'"[9]

16. A survey highlighted in "Prepared Foods" magazine in 2018 noted that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey."[10]

17. Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits."[11]

18. Honey is a naturally occurring substance and, unlike sugar, has small amounts of

---

[6] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[7] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[8] *Id*.
[9] *Id.*
[10] Supra, Trends in Sugar Reduction and Natural Sweeteners.
[11] Brian Kennell, Healthy Food Trends Drive New Products, HuffingtonPost.com, October 1, 2015 updated December 6, 2017.

4

nutrients such as vitamins, minerals, enzymes, and antioxidants.

19. In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well.

20. Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

21. Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

22. Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

C. <u>Contrary to Representations, Honey is Present in De Minimis Amount and Product Is Sweetened Mainly with Sugar</u>

23. The Product's ingredients, listed in descending order of predominance, reveal that "Sugar" is the predominant sweetening agent and "Honey" is least predominant.

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, CONTAINS 2% OR LESS OF: SALT, BAKING SODA, SOY LECITHIN, CALCIUM PHOSPHATE (LEAVENING), ARTIFICIAL FLAVOR, SODIUM SULFITE.

24. By comparing the sugar profile of the Product with the sugar profile of honey, the amount of honey can be estimated slightly above 2%, which is consistent with its placement ahead

5

of the "Contains 2 Percent or Less Of" statement on the ingredient list.

   D. The Product Contains Artificial Flavor Which Imitates Honey, Causing Consumers to Expect a Greater Amount of Honey

25. New York State regulations require companies to not mislead consumers as to the amounts of ingredients represented in a food or beverage. *See* 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.") (incorporating 21 C.F.R. § 101.22, which controls labeling of flavor).

26. The presence of honey is desired by consumers not only because of its positive qualities compared to refine sugar, but because of its taste.

27. Consumer preference is for foods which get their taste from food ingredients – like honey – instead of added flavor because it is perceived as more natural, less processed and not made in a laboratory with additives and solvents.

28. At least seven out of ten consumers avoid artificial flavors because they have been linked to detrimental health effects, contain synthetic ingredients and are highly processed.

29. All demographics of consumers, from Generation Z to Baby Boomers – say they would pay more for foods with no artificial flavors because they are perceived as more natural.

30. However, the Product contains "Artificial Flavor," not disclosed to consumers on the front label where they expect to see it.

31. This artificial flavor enhances and simulates the flavor provided by the negligible amount of honey in the Product, causing consumers to expect it has more honey than it does.

32. Artificial flavors are made from synthetic sources like petroleum by-products such as benzene and or through chemical reactions. *See* 21 C.F.R. § 101.22(a)(1).

33. New York State (and identical federal) regulations require that artificial flavors

which imitate a food's characterizing flavor be disclosed prominently on the front label in addition to the ingredient list. *See* 21 C.F.R. § 101.22(i)(2) (requiring a food with artificial flavor that simulates the characterizing flavor be labeled as "Artificially Flavored").

34. Consumers are misled because they see the honey dipper, picture of honey and the word "honey" so they expect a non-negligible amount of honey.

35. Instead, they do not even get enough real, natural honey flavor because the artificial flavor simulates the taste of honey, but this is omitted from the front label.

36. Even where consumers will see artificial flavor on the ingredient list, they will not know this provides and/or contributes to the Product's honey taste, as opposed to other flavors in the Product.

II. Misleading Due to Representations of Whole Grain Graham Flour

37. The Product's name of "Graham Crackers-Honey" gives reasonable consumers the impression that whole grain graham flour is the primary flour ingredient used.

38. Dictionaries confirm what reasonable consumers expect when it comes to a (honey) "graham cracker," defining it as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[12]

39. This whole grain content distinguishes a graham cracker from other crackers and cookies made with mostly enriched flour, also referred to "white flour" or "refined flour."

40. In whole grain flour, all three parts of the grain are used as opposed to enriched flour, which only uses the endosperm.

41. Because the "Graham" in "Graham Crackers-Honey" refers to whole grain flour,

---

[12] https://www.dictionary.com/browse/graham-cracker

reasonable consumers expect a food identified in this way to have more whole grains than if the main ingredient was enriched flour.

42.    However, the ingredient list reveals "enriched flour" is the predominant flour, indicated by its listing ahead of "Graham Flour."

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, CONTAINS 2% OR LESS OF: SALT, BAKING SODA, SOY LECITHIN, CALCIUM PHOSPHATE (LEAVENING), ARTIFICIAL FLAVOR, SODIUM SULFITE.

43.    The amount of whole grain graham flour in the Product is approximately twenty-five percent of the amount of refined flour.

44.    This is based on the Nutrition Facts, which reveal the Product has only one gram of fiber per serving.

**Nutrition Facts**
Serving Size 31.00 g
Servings Per Container ABOUT 13

Amount Per Serving
**Calories** 130

| | % Daily Value |
|---|---|
| **Total Fat** 3g | 5% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| Polyunsaturated Fat 1.5g | |
| Monounsaturated Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 135mg | 6% |
| **Total Carbohydrate** 24g | 8% |
| Dietary Fiber 1g | 4% |
| Sugars 8g | |
| **Protein** 2g | |

A. <u>Consumers Expect "Whole Grain" Claims to Mean an Appreciable Amount of Fiber</u>

45. Surveys have confirmed that consumers increasingly seek products made with whole grains because they contain more fiber than refined white flour:[13]

- At least half of consumers expect that for every gram of whole grain per serving, there will be at least a gram of fiber;

- Two-thirds of consumers (67%) agree that whole grain foods are high in fiber;

- Identifying a product with the name of a whole grain flour is equivalent to a representation that the product will predominantly be made with whole grain; and

- 75% of consumers who observe claims that a product is made with, or contains whole grains, will expect the food to be at least a good source of fiber.

46. The 2015 Dietary Guidelines for Americans recommended that at least half of the grains in a healthy diet should be whole grains.[14]

47. The FDA cautioned manufacturers against misleading consumers as to whole grain content of foods:[15]

> 7. Question: Does the term "whole grain" mean the same as "100 percent whole grain"? If a product is labeled as "whole wheat bagel" or "whole wheat pizza," how much whole wheat should it contain? What is graham flour?
>
> Answer: FDA has not defined any claims concerning the grain content of foods. However, the agency has established standards of identity for various types of cereal flours and related products in 21 CFR Part 137, including a standard of identity for "whole wheat flour" (§ 137.200) and "whole durum flour" (§ 137.225). Graham flour is an alternative name for whole wheat flour

---

[13] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.
[14] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[15] Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements," Docket No. 2006D-0066, ("Whole Grain Guidance").

9

(§ 137.200).

Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole grain." We recommend that products labeled with "100 percent whole grain" not contain grain ingredients other than those the agency considers to be whole grains.

48. The FDA has warned companies against making misleading whole grain representations in a product name – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers" – where the products were predominantly white flour.[16]

49. The Federal Trade Commission ("FTC") recognized that "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.[17]

50. By highlighting the whole grain ingredient, "Graham," as part of the product name "Graham Crackers-Honey," defendant is highlighting the presence of nutrients associated with whole grains – fiber.[18]

51. Plaintiff and consumers expect a product represented with such "whole grain" claims to provide at least 10 percent ("good source") of the RDI (Reference Daily Intake) or the DRV (Daily Reference Value) of fiber.[19]

52. However, the Product is not a good source of fiber, as the Nutrition Facts reveal one gram of fiber (4%).

---

[16] CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat, Docket No. 93P-0227 (Jun. 25, 1993).
[17] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006
[18] 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.65.
[19] 21 C.F.R. § 101.54(b)-(c).

B. <u>The Small Amount of Honey Darkens the Product's Color</u>

53. Consumers associate darker hues in grain products with the presence of a significant amount of whole grain ingredients.

54. Though the Product contains honey purportedly for its sweetening effect, the honey imparts a darker color.

55. The Product's color would be significantly lighter if based solely on the ratio of refined white flour to whole grain graham flour.

56. According to expert W.K. Nip, the presence of "mostly reducing sugars in its sugar profile" causes "honey [to] brown[s] easily during baking, adding a natural dark color to baked products such as bread, crackers, and other products."[20]

57. The use of a small amount of honey contributes to consumers getting the misleading impression the Product contains more whole grain graham flour than it does.

III. Defendant's Representations Mislead Consumers

58. The Product's labeling, "Graham Crackers – Honey," in large font with a large honey dipper covered in honey, gives consumers the impression it will be mostly sweetened with honey as opposed to sugar and is predominantly made with whole grain graham flour.

59. The deception is compounded by the fact that there is no equally prominent language or picture of white sugar or refined flour on the front label, since these are the primary flour and sweetener ingredients.

60. The labeling as "Graham Crackers – Honey" is not accurate because honey is expected to substantively contribute to the Product's nutritive value, in contrast to its presence in an amount more akin to a flavor.

---

[20] W.K. Nip et al., eds. *Bakery products: science and technology*, Ch. 7, "Sweeteners," John Wiley & Sons, 2006.

11

61. Even as a flavor, however, the Product contains a negligible and insufficient amount of honey to impart a honey taste.

62. If the Product contained enough honey to provide a honey taste the Product would not contain artificial flavor which primarily contributes a honey taste.

63. The Food, Drug, and Cosmetic Act ("FDCA") provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

64. Product names can be misleading when they suggest one or more, but not all, of the key ingredients, like honey and whole grain graham flour, yet fail to disclose other more predominant ingredients like refined flour and basic sugar:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).

65. Federal and state regulations require that a product's name disclose the percentage of honey and whole grain graham flour because these are characterizing ingredients:

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

21 C.F.R. § 102.5(b).

66. Honey and whole grain graham flour are characterizing ingredients" because their proportion has a material bearing on price and consumer acceptance of the Product.

67. Honey and whole grain graham flour are also characterizing ingredient because the labeling creates an erroneous impression that they are present in amounts greater than they are.

12

IV.     Conclusion

68.     Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers.

69.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

70.     The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

71.     Had Plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

72.     The Product contains other representations which are misleading and deceptive.

73.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.29 per box of 14.4 OZ, excluding tax, compared to other similar products represented in a non-misleading way and higher than it would be sold if represented in a non-misleading way.

Jurisdiction and Venue

74.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

75.     Upon information and belief, the aggregate amount in controversy and any available statutory damages exceeds $5,000,000.00, exclusive of interests and costs.

76.     Plaintiff is a citizen of Rockland County, New York.

77.     Defendant is a Delaware limited liability company with a principal place of business in Quincy, Norfolk County, Massachusetts and is a citizen of Massachusetts. and upon information and belief, at least one member of Defendant is not a citizen of New York.

78. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

79. Venue is proper because Plaintiff and many class members reside in this District and Defendant does business in this District and State.

80. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

81. Plaintiff Kari Warren is a citizen of New City, Rockland County, New York.

82. Defendant The Stop & Shop Supermarket Company LLC is a Delaware limited liability company with a principal place of business in Quincy, Massachusetts, Norfolk County.

83. Defendant operates close to 500 Stop & Shop supermarkets in the mid-Atlantic states and New England.

84. The Product is available to consumers from Defendant's retail stores and their online ordering services and is sold in boxes of 14.4 OZ (408g).

85. Plaintiff purchased the Product numerous times during 2018, 2019 and 2020 at Defendant's locations including 180 N Main St, New City, NY 10956 and 32 S Middletown Rd, Nanuet, NY 10954.

86. Plaintiff bought the Product at or exceeding the above-referenced prices because she expected it would have a non-*de minimis* amount of whole grain and honey.

87. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

88. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or paid as much.

89. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's label is lawful and consistent with the Product's ingredients.

## Class Allegations

90. The classes will consist of all purchasers of the Products in New York during the applicable statutes of limitations.

91. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

92. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

93. Plaintiff is an adequate representative because her interests do not conflict with other members.

94. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

95. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

96. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

97. Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York GBL §§ 349 & 350
### (Consumer Protection from Deceptive Acts)

98. Plaintiff and class members desired to purchase a product mainly made with whole grain graham flour and not sweetened with sugar, but with honey.

99. Defendant's acts and omissions are not unique to the parties and have a broader

impact on the public.

100. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

101. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products were primarily if not exclusively sweetened with honey instead of sugar and that whole grain graham flour was the predominant flour ingredient.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

103. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

104. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

105. This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production and sale of the graham crackers.

106. Defendant is one of the oldest grocery store chains in the country and has built up consumer trust for over a hundred years.

107. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

108. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

16

109. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

110. The Product was manufactured, labeled and sold by Defendant and warranted to Plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

111. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

112. This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector.

113. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers and their employees.

114. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by businesses, regulators and consumers to its main office over the past several years.

115. The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable, understood as being able to pass for a product made mainly from whole grains and sweetened mainly with honey.

116. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

117. Defendant's fraudulent intent is evinced by its failure to accurately identify the

17

Product on the front label and representing the less predominant ingredients as most predominant.

118. Plaintiff and class members suffered damages by paying more for the Product.

## Unjust Enrichment

119. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary and statutory damages and interest, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 18, 2021

          Respectfully submitted,

          Sheehan & Associates, P.C.

       /s/Spencer Sheehan  
Spencer Sheehan  
505 Northern Blvd Ste 311  
Great Neck NY 11021-5101  
Tel: (516) 303-0552  
Fax: (516) 234-7800  
*spencer@spencersheehan.com*

7:20-cv-08718-NSR
United States District Court
Southern District of New York

Kari Warren, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Stop & Shop Supermarket Company LLC,

Defendant

First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: April 18, 2021

/s/ Spencer Sheehan