UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARI WARREN, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

        -against-

THE STOP & SHOP SUPERMARKET, LLC,

                                        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __03/16/2022__

No. 20 Civ. 8718 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This putative class action alleges that Defendant The Stop & Shop Supermarket LLC misrepresented to consumers the extent to which its "Graham Crackers – Honey" from its Stop & Shop brand ("the Product") is made mainly from whole grains, as well as sweetened and flavored only or predominantly from honey. (Am. Compl. at 1–13, ECF No. 17.) Plaintiff Kari Warren, individually and on behalf of others similarly situated, brings this action against Defendant asserting claims for violations of New York's General Business Law §§ 349 and 350, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. (*Id.* at 13–18.) Presently pending before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18.) For the following reasons, the Court GRANTS IN PART, DENIES IN PART Defendant's motion to dismiss.

## BACKGROUND

### I.  Factual Background

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

Defendant manufactures, distributes, markets, labels, and sells crackers purporting to be sweetened primarily with honey and made mainly from whole grains, as depicted in the image below:



(Am. Compl. ¶¶ 1, 3.) The label also states that the Product's ingredients include:

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN, MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE GRAIN WHEAR FLOUR), SUGAR, CANOLA AND/OR SOYBEAN AND/OR PALM OIL, HONEY, CONTAINS 2% OR LESS OF SALT, BAKING SODA, SOY LECITHIN, CALCIUM PHOSPHATE (LEAVENING), ARTIFICIAL FLAVOR, SODIUM SULFITE.

(*Id.* ¶ 23.)

Plaintiff alleges the Product's label is misleading because: first, the Product is sweetened primarily with sugar and contains a miniscule amount of honey; second, it is neither exclusively

nor predominantly flavored from honey; and third, it is predominantly made with enriched flour and not graham flour. (*Id.* ¶¶ 4, 23, 34–37, 42–43.) Specifically, she claims that the Product's ingredients panel, which lists ingredients in descending order of predominance, reveal that the Product predominantly contains "enriched flour" and "sugar" over "graham flour," and "honey," respectively. (*Id.* ¶¶ 23–24, 42–43.)

Plaintiff further claims that under federal regulations, the Product's packaging is misleading because it fails to disclose that the Product contains artificial flavoring that simulates the taste of honey, as well as the percentage of honey content in the Product. (*Id.* ¶¶ 32–33, 63–65.) Plaintiff similarly claims that under federal regulations and guidance, the Product's packaging is misleading because the label "Graham Crackers" claims to be entirely or predominantly made with "graham flour," an alternative name for "whole wheat flour," which in turn could be construed to represent that it comprises of "100 percent whole grain" when it in fact does not. (*Id.* ¶¶ 46–48, 59, 63–64.) She also claims the Product's packaging fails to disclose the percentage of graham flour content in the Product. (*Id.* ¶ 65.)

In sum, Plaintiff claims that Defendant's branding and packaging of the Product is designed to, and does, deceive, mislead, and defraud consumers. (*Id.* ¶ 68.) She also claims that Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers. (*Id.* ¶ 69.) Particularly, Plaintiff claims that as a result of the false and misleading representations, Defendant sold the Product at a premium price, approximately no less than $3.29 per box of 14.4 oz, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold absent the misleading representations and omissions. (*Id.* ¶ 73.)

Plaintiff finally alleges that she purchased the Product numerous times during 2018, 2019, and 2020, at Defendant's locations, including 180 N. Main St, New City, NY 10956 and 32 S. Middletown Rd, Nanuet, NY 10954.  (*Id.* ¶ 85.) She claims to be among a class of consumers who were deceived by and relied upon the Product's deceptive labeling, and bought the Product at or exceeding the price of $3.29 expecting it would have a non-*de minimis* amount of whole grain and honey. (*Id.* ¶¶ 86–87.) Plaintiff further claims that she would not have paid as much for the Product absent Defendant's false and misleading statements and omissions. (*Id.* ¶ 88.)

## II.  Procedural Background

On October 19, 2020, Plaintiff filed the original operative class action complaint (Compl., ECF No. 1.) On March 12, 2021, Defendant filed a letter seeking leave to file a motion to dismiss, which also stated the grounds on which Defendant would move for dismissal. (ECF No. 14.) Five days later, Plaintiff requested an extension of time to file an amended complaint that would address the deficiencies set forth in Defendant's letter and obliviate the need for a motion to dismiss, which the Court subsequently granted. (ECF Nos. 15 & 16.) The Court also granted Defendant leave to file an answer within 30 days of Plaintiff filing her amended complaint or to serve a motion to dismiss (ECF No. 16.) On April 18, 2021, Plaintiff filed her Amended Complaint on behalf of all purchasers of the Product who reside in New York, asserting claims for (1) violation of New York General Business Law §§ 349 and 350; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson Moss Warranty Act; (5) negligent misrepresentation; (6) fraud; and (7) unjust enrichment.  (Am. Compl., ECF No. 17.) As relief, Plaintiff seeks both monetary damages and injunctive relief that would require Defendant to correct the Product's allegedly misleading label. (*Id.*)

On July 6, 2021, the parties filed their respective briefing on the instant motion: Defendant its notice of motion (ECF No. 18), memorandum in support ("Motion," ECF No. 19) with an

4

accompanying declaration with exhibits (Brew Decl., ECF No. 21), and reply ("Reply," ECF No. 22); and Plaintiff her response in opposition ("Response in Opposition," ECF No. 20).

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of New York General Business Law ("GBL") §§ 349 and 350, (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act ("MMWA"), (6) fraud, and (7) unjust enrichment.  (*See* Am. Compl. at 13–18.) Defendant seeks to dismiss all claims based on two grounds, including: (1) failure to state a claim; and (2) federal preemption. (*See* Mot. at 13–34.) The Court addresses Plaintiff's claims in that order.

## I.    New York General Business Law Sections 349 and 350

Defendant argues that Plaintiff fails to assert a plausible claim under GBL §§ 349 and 350 by alleging that the Product's packaging is misleading because reasonable consumers would

understand that "graham crackers" refers to the type of food the Product contains, not that it is predominantly made from whole grain flour. Defendant also argues that a reasonable consumer would understand that "honey" merely refers to its flavor, and not an ingredient or its predominant sweetener. (Mot. at 19–27.) After due consideration, the Court agrees with Defendant with respect to Plaintiff's allegations on the Product's "honey" label, but it disagrees with respect to her allegations on the Product's "graham crackers" label.

GBL § 349 involves unlawful deceptive acts and practices, while § 350 involves unlawful false advertising. "The standard for recovery under [§] 350, while specific to false advertising, is otherwise identical to [§] 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both §§ 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). The parties' main dispute in the instant motion involves the second element: whether Defendant engaged in deceptive or materially misleading acts or practices.

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13,

2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

  A.  *A reasonable consumer would not find the "honey" label misleading*

  In the Amended Complaint, Plaintiff alleges that the Product's "honey" label is misleading because it suggests honey is the Product's predominant "sweetener" *and* that its honey flavor derives mostly or exclusively from honey. (Am. Compl. ¶¶ 4, 23–24, 34–36.) But after due consideration, the Court concludes that the Product's "honey" label would not lead a reasonable consumer to understand either that honey is the Product's predominant "sweetener" or that its honey flavor derives mostly or exclusively from honey.

  First, with respect to Plaintiff's allegations about the Product's honey flavor, *numerous* courts (including this Court) have already dismissed similar challenges involving the use of the word "vanilla" on food labels because there is nothing in the word "vanilla" itself that would lead a reasonable consumer to understand a product's flavor to be derived mostly or exclusively from the vanilla bean. *See, e.g.*, *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (concluding that the Product's "vanilla" label would not lead a reasonable consumer to understand its flavor to be derived mostly or exclusively from the vanilla bean."); *Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *3 (S.D.N.Y. Jan. 28, 2022) ("Plaintiffs have failed to plausibly allege that a reasonable consumer would see the label on the Product and be misled to conclude the vanilla flavor derived predominantly from real vanilla."); *Jones v. Orgain, LLC*, No. 20-cv-8463 (VB), 2021 WL 4392783, at *3 (S.D.N.Y. Sept. 24, 2021) (dismissing claim where the label "explicitly states it is

'vanilla bean <u>flavor</u>' ") (emphasis in original); *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 1:19-cv-03209 (RJD)(ST), 2021 WL 2843137, at *3 (E.D.N.Y. July 6, 2021) (explaining the phrase "vanilla ice cream" do not "make any claims about where or in what quantity the vanilla taste comes from. It simply alerts a consumer faced with different flavors that this ice cream tastes like vanilla"); *Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021) (finding that the phrase "Vanilla Flavored" does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2021 WL 1580827, at *2 (N.D. Cal. Apr. 22, 2021) (dismissing challenge to "Vanilla Soymilk" label because it lacked "any other words or pictures that suggest the vanilla flavor is derived *exclusively* from the vanilla bean") (emphasis in original); *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-cv-10102 (KMK), 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021) ("[T]he words 'vanilla bean' are used to modify the words 'ice cream,' thereby specifying the flavor consumers can expect. The Product label does not contain an ingredient claim such as 'Made With Vanilla Beans,' or 'Made From Vanilla Beans,' in which case the Court's conclusion would likely be different."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (concluding that the word "vanilla" on the front of the package "appears to describe a flavor more than an ingredient" where there was "no reference to 'vanilla bean' or 'vanilla extract' anywhere on the packaging; nor [was] there any reference to the product being 'made with' or 'made from' any part of the vanilla plant"); *Parham, v. ALDI, Inc.*, No. 1:19-cv-08975 (PGG) (SDA), 2021 WL 709632, at *3 (S.D.N.Y. Feb. 15, 2021) ("A reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains, especially in circumstances where the ingredients listed . . . do not mention vanilla at all."); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp.

3d 154, 162 (S.D.N.Y. 2021) ("A reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim."); *Wynn v. Topco Assocs., LLC*, No. 19-cv-11104, 2021 WL 168541, at *4 (S.D.N.Y. Jan. 19, 2021) (finding "a reasonable consumer would [not] see a 'Vanilla Almondmilk' beverage and be misled into concluding that the vanilla flavor derived exclusively from real vanilla" where the "front label makes no explicit claims about the ingredients constituting the flavor . . . for example, [it does not] say 'made with real vanilla extract' or even mention vanilla extract at all"); *Barreto v. Westbrae Natural, Inc.*, No. 19-cv-9677 (PKC), 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021) (explaining that the words "Vanilla Soymilk" and "Natural Vanilla Flavor With Other Natural Flavors" make "a representation regarding . . . flavor [but do] not imply or represent [that] the source of that flavor comes exclusively or predominantly from natural vanilla"); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993, 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (concluding that a reasonable consumer would associate the word "vanilla" with a flavor, rather than a particular ingredient); *Pichardo*, 2020 WL 6323775, at *5 (finding that "reasonable consumers associate the word 'vanilla' with a flavor, not an ingredient"); *Steele v. Wegmans Food Mkts. Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (explaining that the word "vanilla" assists buyers in determining the *flavor* of a product, rather than the source of that flavor).[1]

Here, as in those cases, the Product's packaging does not use language such as "made with honey" or "made with real honey," or anything similar. *See Cosgrove*, 2020 WL 7211218, at *4. Instead, "[t]he Product makes one representation—that it is [honey] flavored—and Plaintiff[] do[es] not allege that the Product did not deliver on that representation." *Id.* Hence, when assessing the Product's packaging as a whole, "a reasonable consumer would conclude that the [graham

---

[1] Plaintiff's counsel, Spencer Sheehan of Sheehan & Associates, P.C., was also counsel in each of all these cases.

crackers] ha[ve] a [honey] flavor . . . . There is no claim anywhere on the packaging that . . . [honey] is the predominant source of the [honey] flavor . . . ." *Barreto*, 518 F. Supp. 3d at 803.

To be sure, the court in *Campbell v. Whole Foods Market Group., Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021), reached a different result. In *Campbell*, the product's label included terms such as "Honey Graham crackers" and "Organic." *Id.* at 377. The label depicted the word "Honey" above the word "Graham," both words in large orange letters in the same font type and size, while below them was the word "crackers" in a smaller font-size and deep red letters—suggesting that "crackers" was subordinate to "Honey Graham." *Id.* at 377–78. In assessing the packaging as a whole, the *Campbell* court concluded that the label's design suggested that honey was an ingredient, not just a flavor. *Id.* at 385. In fact, in a footnote, the *Campbell* court emphasized that this kind of analysis is "fact-specific . . . based on the packaging", and that its conclusion is not one "that any [similar] reference . . . for [other] products must be construed as a reference to an ingredient." *Id.* at 385 n.7.

Thus, *Campbell* is distinguishable because the label here depicts the word "honey" in a smaller white font with an orange background immediately below the words "Graham Crackers" in a larger blue font—which suggests that the term "honey" is subordinate to "Graham Crackers." Therefore, the Court concludes that a reasonable consumer would associate the "honey" "label with the Product's flavor and not as a particular ingredient, much less the predominant one.

And with respect to Plaintiff's allegations about honey being the Product's predominant sweetener, other courts have dismissed similar claims because there is nothing in the mere use of the word "honey" that would lead a reasonable consumer to understand that the Product is exclusively sweetened by honey. *See, e.g.*, *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) ("Sweetening grahams with honey

does not foreclose the use of other sweeteners or make the representation deceptive."); *Lima v. Post Consumer Brands, LLC*, No. 18-CV-12100, 2019 WL 3802885, at *7 (D. Mass. Aug. 13, 2019) (holding that labeling of "*Honey* Bunches of Oats" with honey dipper was not deceptive because the "packaging . . . ma[d]e[ ] no objective representation about the amount of honey, leaving the cereal's accurate list of ingredients as the only unambiguous representation of the amount of honey relative to other sweeteners" and a reasonable consumer "would have recognized that the cereal might be sweetened with some honey, but also with other sweeteners"), *reconsideration denied*, 2019 WL 4889599 (Oct. 2, 2019); *see also Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *4–*5 (E.D.N.Y. Feb. 13, 2020) ("BEF's emphasis of the Mashed Potatoes' 'Real . . . Butter' content is not likely to mislead a reasonable consumer. First, the Mashed Potatoes do, in fact, contain real butter. Second, it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats. Certainly, a significant portion of the general consuming public . . . acting reasonably would not arrive at such an interpretation[.]" (citations and quotations omitted)).

Here, as discussed above, when assessing the Product's packaging as a whole, the label's use of the word "honey" by itself merely represents that the Product is honey flavored, not that honey is an ingredient—much less, the predominant sweetening ingredient. *Cf. Campbell*, 516 F. Supp. 3d at 385–86 ("[H]oney is both a flavor and a sweetening ingredient. . . . [Thus] the packaging's prominent use of "honey" and honey imagery can be understood by a reasonable consumer to imply that honey is the primary sweetener."). Indeed, the Product's label does not use language such as "made with pure honey," "sweetened with pure honey," "no added sugars," or anything similar. Hence, in assessing the Product's packaging as a whole, the Court concludes that

a reasonable consumer "would have recognized that the [graham crackers] might be sweetened with some honey, but also with other sweeteners." *Lima*, 2019 WL 3802885, at *7.[2]

B.      But Plaintiff has adequately pleaded that a reasonable consumer may find the word "graham" in the label misleading

However, in evaluating Plaintiff's allegations involving the phrase "Graham Crackers," the Court cannot conclude that Plaintiff has failed to plead that a reasonable consumer is likely to be misled by the use of the word "graham" on the Product's label.

In her Amended Complaint, Plaintiff alleges that reasonable consumers understand that the Product's name of "Graham Crackers" "gives reasonable consumers the impression that whole grain graham flour is the primary flour ingredient used." (Am. Compl. ¶ 37.)  That is because reasonable consumers understand that a "graham cracker," as its dictionary definitions confirm, is "a slightly sweet cracker made of whole wheat flour" or "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour." (*Id.* ¶ 38.) In other words, Plaintiff alleges that reasonable consumers understand the term "graham" in "graham crackers" to refer to "whole grain flour." Consequently, Plaintiff alleges that the Product's packaging is misleading because while it includes the term "graham," the Product's ingredient list reveals that the Product comprises more of enriched flour than it does of whole grain flour. (*Id.* ¶¶ 41–43.)

But Defendant argues that "[t]he reality is that 'the word 'graham' when included . . . in the phrase 'graham crackers' does not connote graham flour.'" (Mot. at 21 (quoting *Kennedy*, 2020 WL 4006197, at *9).) Defendant avers that "[r]easonable consumers do not understand 'graham crackers to mean that a specific type of flour is predominant in the food. Rather, consumers

---

[2] To the extent that Plaintiff's allegations involving honey attempt to raise a separate cause of action premised on an alleged violation of an FDA regulation, the Court dismisses such claim because there is no private right of action to enforce FDA regulations. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997); *Boata v. Pfizer, Inc.*, No. 10-cv-4390, 2010 WL 4878872, at *5 (S.D.N.Y. Dec. 1, 2010); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010).

understand 'graham crackers' to be the 'slightly sweet, darker-colored, rectangular, and perforated cracker' 'used in desserts like 's'mores.'" (*Id.* at 20 (quoting *Kennedy*, 2020 WL 4006197, at *9, *11).) Thus, Defendant argues the use of the phrase "graham crackers" itself in the packaging does not imply or suggest that the Product is made predominantly with whole grain graham flour. (*Id.* at 21–22.)

Yet, for purposes of this motion, the Court must accept all factual allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See Freidus*, 734 F.3d at 137. Consequently, "in evaluating the allegations here, the Court cannot assume that consumers will be . . . ignorant of the clear-cut meaning of the term 'graham'" that Plaintiff advances here. *Campbell*, 516 F. Supp. 3d at 384. In fact, "Plaintiff alleges that she . . . read the box understanding it to refer to the whole wheat content of the crackers." *Id.*; (*see also* Am. Compl. ¶¶ 86–88.)

Further, a reasonable consumer, after reviewing the Product's ingredient panel, could plausibly surmise that "graham crackers" get their name from the flour that shares the same name: "graham flour." (Am. Compl. ¶ 42.) It follows then, that a reasonable consumer could also surmise that "graham flour" refers to "whole grain wheat flour" after noticing that the Product's ingredient panel lists the ingredient as: "GRAHAM FLOUR (WHOLE GRAIN WHEAT FLOUR)." (*Id.*) Thus, it is also plausible that a reasonable consumer may question why would the ingredient panel for "graham crackers" indicate that the Product comprises more of "enriched flour" than of the flour from which it derives its name. *See, e.g.*, *Mantikas v. Kellog Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("[A] reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.").

"It is important to remember that at least in some cases, a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare that reasonable consumers would not be misled." *Campbell*, 516 F. Supp. 3d at 384 (internal quotation marks omitted); *see also Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world")). Hence, "the Court cannot conclude that Plaintiff has failed to plead that a reasonable consumer is likely to be misled by the use of 'graham' on the packaging for this product . . . [as] [i]t is not implausible that consumers would understand the words on the box to say what they mean." *Campbell*, 516 F. Supp. 3d at 385. "Evidence, such as a consumer survey, not merely judicial introspection, is needed to determine what consumers understand the phrase to mean in the context of this particular product and its packaging." *Id.* In sum, at this point, the Court cannot conclude as a matter of law that no reasonable consumer would be misled by Defendant's use of the word "graham" in the Product's packaging.

C.    *The Court cannot conclude that Plaintiff's surviving consumer protection claims are preempted under the Food, Drug, and Cosmetic Act*

But Defendant contends that even if Plaintiff plausibly alleges consumer protection claims under GBL §§ 349 and 350, her claims are still preempted by the Food, Drug, and Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA"). Specifically, Defendant reasons that because the Product's label complies with federal law and regulations, Plaintiff's claims appear to impose additional or different food labeling requirements that are inconsistent with those imposed by the FDCA. (Mot. at 13–18.)

Because a defendant asserting preemption bears the burden of proving that it applies, the Court will determine whether Defendant carries its burden. *See Bruesewitz v. Wyeth LLC,* 562 U.S.

14

223, 251 n.2 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof") (citations omitted). After due consideration, the Court concludes that Defendant has failed to do so.

Under the Supremacy Clause of the Constitution, state laws are invalid if they "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution." *Gibbons v. Ogden,* 22 U.S. 1, 211 (1824). Federal law can preempt state law if Congress expresses its intent to preempt the law through explicit statutory language ("express preemption") or, in the absence of explicit statutory language, if the state law regulates conduct in a field that Congress intended the federal government to occupy exclusively ("field preemption") or directly conflicts with federal law ("conflict preemption"). *See N.Y. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 641 (2d Cir. 2005). Here, only express preemption is at issue.

Where a statute includes an express preemption clause, "[the court] do[es] not invoke any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citing *Chamber of Commerce of United States of America v. Whiting,* 563 U.S. 582, 594 (2011)); *see also Canale v. Colgate-Palmolive Co.*, 258 F.Supp.3d 312, 319–20 (S.D.N.Y. 2017) ("where . . . Congress has expressly manifested its intent to preempt state law, no presumption against preemption arises"). Here, Congress has expressly manifested such intent in the FDCA:

> (a) Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . .
>
> (5) any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the

15

> requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

21 U.S.C. § 343-1(a)(5).

"The [FDCA] . . . forbids the misbranding of food, including by means of false or misleading labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014) (citing 21 U.S.C. §§ 331, 343). The NLEA, which amended the FDCA, requires labeling of packaged foods, regulates the making of claims about the nutrient content of foods, and expressly preempts state law requirements regarding nutrient content claims. *See* 21 U.S.C. §§ 343(q), 343(r), 343-1(a)(5). In 21 U.S.C. § 343-1(a)(5), Congress established, in relevant part:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce .... any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

That said, however, "[w]here federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F.Supp.2d 527, 538 (S.D.N.Y. 2008). Therefore, in determining whether Plaintiff's consumer protection claims are preempted by the FDCA, the Court must determine whether such claims seek to impose requirements that are affirmatively different from the requirements in the FDCA. *See id.* at 532 ("Stated differently," "the only state requirements that are subject to preemption are those that are affirmatively different from the Federal requirements.").

As relevant here, section 343 of the FDA delineates the ways by which food can be misbranded. For example, section 343(a) provides that "[a] food shall be deemed to be misbranded if its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). Then, section 343(i) in

16

turn provides that a good is misbranded if the label does not bear "the common or usual name of the food, if any there be." *Id.* § 343(i).

Further, the Food and Drug Administration ("FDA") has promulgated regulations establishing "general principles" for the "common or usual name of a food," among them that "[t]he name shall be uniform among all identical or similar products" and that the name "may be established [either] by common usage" or regulation. 21 C.F.R. § 102.5(a), (d). Common, usual names are meant to be "uniform among all identical or similar products" and "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *Id.* § 102.5(a).

Here, Defendant contends that the "Graham Crackers" name complies with FDA regulations. Defendant avers that FDA regulations do not prescribe a "standard of identity" for graham crackers as it does for other foods, such as yoghurt for example. (Mot. at 14 (citing 21 C.F.R. § 131.200).) Hence, Defendant avers that "products like [its] Product—a flat, rectangular, perforated, sweet, crunchy cracker—have been sold under the common, usual name 'graham cracker' for decades" because such name "accurately describes the Product as it is a cracker made with graham flour" and has been used "to identify products with similar shape, texture, and composition." (*Id.*) Thus, because the Product's name "Graham Crackers" complies with FDA regulations, Plaintiff's consumer protection claims seek to impose additional obligations different or contrary to the federal requirements under the FDCA and its implementing regulations. (*Id.*) In support of this position, Defendant relies in part on the Central District of California's decision in *Painter v. Blue Diamond Growers*, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th Cir. 2018), which held that "Almond milk" was not a deceptive label because it

was found by the court to be consistent with the "common or usual name" regulations set out in 21 C.F.R. § 102.5(a).

But "[a]t the pleading stage, preemption constitutes grounds for dismissal only 'if the statute's barrier to suit is evident from the face of the complaint.'" *K.D. Hercules, Inc. v. Laborers Loc. 78 of Laborers' Int'l Union of N. Am.*, 2021 WL 1614369, at \*2 (S.D.N.Y. Apr. 26, 2021) (quoting *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015)). "[Defendant's] argument for preemption, however, rests on factual assertions regarding the 'common usage' of the term 'graham cracker' that go beyond the allegations of the [Amended Complaint]." *Valcarcel v. Ahold U.S.A., Inc.*, --- F. Supp. 3d ---, No. 21-CV-07821 (JSR), 2021 WL 6106209, at \*4 (S.D.N.Y. Dec. 22, 2021). "Indeed, while it may be possible in some cases to ascertain how a term is commonly used on a motion to dismiss, [Defendant's] argument here invites the Court to define a 'graham cracker' in terms of its shape and taste on the basis of what would essentially be speculation." *Id.* "This [the Court] cannot do." *Id.*[3] Accordingly, at this point, the Court cannot conclude that Defendant's consumer protection claims involving the "Graham Crackers" label are preempted by federal law.[4]

---

[3] As another court in this Circuit noted in an analogous case involving graham crackers:

> To the extent the district court's decision in *Painter* suggests a different result, that decision is unpersuasive. In *Painter*, the district court relied on the prior decision in *Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at \*3 (N.D. Cal. Dec. 10, 2013), holding that "soymilk," "almond milk," and "coconut milk" are appropriate "common or usual name[s]" because, in the court's view, they "accurately describe[d] [the defendants'] products." However, in the absence of an FDA-promulgated regulation on the subject, the "common or usual name" is defined by "common usage," not the court's own judgment as to whether a term is accurate. 21 C.F.R. § 102.5(d). Notably, in affirming the district court's decision in *Painter* case, the Ninth Circuit relied on an alternative ground based on a specific FDCA regulation governing "imitation" products. *See Painter v. Blue Diamond Growers*, 757 F. App'x 517, 518 (9th Cir. 2018).

*Valcarcel*, 2021 WL 6106209, at \*4 n.11.

[4] The Court reiterates that to the extent that Plaintiff's allegations involving the use of the phrase "graham crackers" attempt to raise a separate cause of action premised on an alleged violation of an FDA regulation, the Court dismisses such claim because there is no private right of action to enforce FDA regulations. *See Friedlander*, 103 F.3d at 1113; *Boata*, 2010 WL 4878872, at \*5; *Verzani*, 2010 WL 3911499, at \*3.

## II. Negligent Misrepresentation

"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.' " *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). After due consideration, the Court concludes that Plaintiff's negligent misrepresentation fails because she has failed to allege the existence of a special relationship giving rise to a duty to speak on the part of Defendant.

"Under the 'duty' element, New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.* (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (internal quotation marks omitted)). "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)) (alterations in original). *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information

would be put and supplied it for that purpose. *Id.* (quoting *Kimmell*, 89 N.Y.2d at 264) (internal quotation marks omitted).

Applying the *Kimmell* factors, the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant. "[N]ot all representations made by a seller of goods . . . will give rise to a duty to speak with care." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell*, 89 N.Y.2d at 263). "Instead, the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Id.* (citing *Kimmell*, 89 N.Y.2d at 263).

The Amended Complaint's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller—which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation. *See, e.g.*, *Izquierdo*, 2016 WL 6459832, at *8 (dismissing negligent misrepresentation claim based on allegedly misleading candy packaging because "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing New York law negligent misrepresentation claim alleging defendant's products were misleadingly labeled as organic, natural, or all natural for "failure to plead any cognizable special relationship" with the defendant, reasoning that "[d]efendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties."). Because the relationship between Plaintiff and Defendant was not so close

as to approach that of privity, Plaintiff has not adequately pleaded that Defendant had a duty to provide information to Plaintiff.

Accordingly, the Court dismisses Plaintiff's negligent misrepresentation claim.

### III. Breach of Express Warranty

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). However, "[i]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'"[5] *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

Here, the Court concludes that Plaintiff's express warranty claim fails for lack of timely notice. Plaintiff alleges only that "[she] provided or will provide notice to Defendant, its agents, representatives, retailers and their employees." (Am. Comp. ¶ 113.) "That allegation is insufficient to show that the buyer provided timely notice of the alleged breach—the statement is wholly

---

[5] "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see also Lugones*, 440 F. Supp. 3d at 245 (following *Colella* and finding the exception "inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach"). Here, too, Plaintiff has not alleged any physical or personal injury, so the exception is inapplicable.

equivocal." *Campbell*, 516 F. Supp. 3d at 391. It does not allege that notice has been provided, only that Plaintiff "provided or will provide" notice.[6] "If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future. Plaintiff has not adequately pleaded that she in fact provided notice." *Id.*

Accordingly, the Court dismisses Plaintiff's claim for breach of express warranty. *See Lugones*, 440 F. Supp. 3d at 245 (finding that "Plaintiffs must allege some form of timely, pre-litigation notice" and dismissing breach of express warranty claim for failure to provide timely notice); *Colella*, 348 F. Supp. 3d at 143–44 (dismissing express warranty claim where the complaining "ma[de] no allegations and state[d] no facts showing that notice was provided to defendant"); *Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to allege timely notice).

## IV. Breach of Implied Warranty of Merchantability

On the same basis on which the Court dismissed Plaintiff's claim for breach of express warranty, the Court similarly dismisses her claim for breach of the implied warranty of merchantability. "The U.C.C.'s notice requirement for express warranty claims also applies to claims for breach of implied warranty." *Campbell*, 516 F. Supp. 3d at 392; *see also Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing

---

[6] Plaintiff also alleges that "Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years." (Am. Compl. ¶ 114.) This allegation does not suggest that the buyer provided timely notice, as required.

express and implied warranty claims under Section 2-607(3) of the New York Uniform Commercial Code because the complaint "lacks any allegation that plaintiff notified [the defendant]").

### V. Magnuson Moss Warranty Act

Plaintiff also brings a claim under the MMWA, 15 U.S.C. §§ 2301, *et seq.* (Am Compl. at 12–13.) "To state a claim under MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Hence, as her state law claims for express and implied warranty fail, Plaintiff's MMWA claim similarly fails for the same reasons.

### VI. Fraud

To state a claim of fraud under New York law, Plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of* Warhol, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Here, the Court concludes that Plaintiff's fraud claim fails because she has failed to plead fraudulent intent. Plaintiff's only allegation about Defendant's intent is that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and representing the less predominant ingredients as most predominant." (Am. Compl. ¶ 117.) That allegation on its own is insufficient because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)). "Moreover, while the existence of accurate information regarding the product's ingredients on the package does not stymie a deceptive labeling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud." *Campbell*, 516 F. Supp. 3d at 391.

Accordingly, the Court dismisses Plaintiff's claim for fraud.

## VII.        Unjust Enrichment

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). However, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Izquierdo*, 2016 WL 6459832, at *10 (quoting *Corsello*, 18 N.Y.3d 777 at 790–91) (internal quotation marks omitted). "And an unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473–74

(S.D.N.Y. 2020) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

Here, the Court concludes that Plaintiff's unjust enrichment claim is duplicative of her other claims. The entirety of Plaintiff's unjust enrichment count reads: "Defendant obtained benefits and monies because the Product[] [was] not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Am. Compl. ¶ 119.) "Thus, the unjust enrichment claim is a mere repackaging of her other claims based on the alleged misrepresentations on the Product's packaging." *Campbell*, 516 F. Supp. 3d at 394. It "relies on the same factual allegations and the same theory of liability" as Plaintiff's other theories of recovery. *Hesse*, 463 F. Supp. 3d at 474 (dismissing unjust enrichment claim as duplicative of other claims alleging defendant's chocolate label was misleading); *see also Alce v. Wise Foods, Inc.*, No. 17-cv-2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative because the unjust enrichment allegations were "a mere regurgitation of those made with respect to plaintiffs' slack-fill claims under the GBL . . . .").

Accordingly, the Court dismisses Plaintiff's unjust enrichment claim as duplicative.

## VIII.     Injunctive Relief

Finally, Plaintiff seeks injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Am. Compl. at 18.) But after due consideration, the Court agrees with Defendant that Plaintiff does not have Article III standing to pursue injunctive relief because she is aware of the allegedly deceptive packaging, and therefore cannot demonstrate that she will be harmed in a similar way in the future. (Mot. at 33–34.)

"A plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* "In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks standing to seek injunctive relief." *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-cv-5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018)).

The Second Circuit recently reaffirmed this conclusion in the context of a consumer confronted by allegedly deceptive packaging in *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–49 (2d Cir. 2020). The Second Circuit reasoned the following in relevant part:

> In the first place, past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item . . . . But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas. Instead, next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning.

*Id.* at 147–48.

As in <u>*Berni*</u>, Plaintiff fails to show how she is likely to be harmed again in the future in a similar way. Indeed, Plaintiff alleges that had she known the truth about the Product, she would not have purchased it or she would have paid less. (Am. Compl. ¶ 71.) Yet, at the same time, she

asserts that she "intends to, seeks to, and will purchase the Product again when [s]he can do so with the assurance that Product's label is lawful and consistent with the Product's ingredients." (*Id.* ¶ 89.) Thus, Plaintiff appears to say that she will not buy the product so long as the label remains misleading. Therefore, "[b]ecause [Plaintiff] admit[s] that [she] [is] unlikely to purchase the [Product] at issue, unless the [Product] [is] changed, [she] lack[s] standing to seek injunctive relief." *Sharpe*, 481 F. Supp. 3d at 101 (citing *In re Amla Litig.*, 320 F. Supp.3d 578, 593 (S.D.N.Y. 2018) (holding that plaintiffs lacked standing to seek injunctive relief under GBL § 349 where they "adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that they would not have purchased the product in the first place had they known of its alleged defects"). Accordingly, the Court denies Plaintiff's request for injunctive relief.

## IX. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss. (ECF No. 14.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the

proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim.*") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, while Plaintiff requested leave to file a Second Amended Complaint within the last sentence of her response in opposition, she has not otherwise suggested that she is in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave

to amend); *see also Twohig*, 519 F. Supp. 3d at 169 (dismissing substantially similar claims involving vanilla flavoring in soymilk with prejudice and without leave to amend because plaintiff had already amended once after having the benefit of a pre-motion letter from defendant stating the grounds on which it would move to dismiss). Accordingly, with respect to all those claims that the Court has dismissed from the Amended Complaint, the Court will dismiss them with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART, DENIES IN PART Defendant's motion to dismiss (ECF No. 18.) The Court GRANTS the motion with respect to Plaintiff's (1) consumer protection claims under GBL §§ 349 and 350 involving the use of the word "honey"; (2) claim for negligent misrepresentation; (3) claim for breach of express warranty; (4) claim for breach of implied warranty of merchantability; (5) claim under the Magnuson Moss Warranty Act; (6) claim for fraud; (7) claim for unjust enrichment; and (8) request for injunctive relief. The Court DISMISSES all these claims with prejudice. The Court DENIES the motion with respect to Plaintiff's consumer protection claims under GBL §§ 349 and 350 involving the use of the word "graham."

The Court further DIRECTS Defendant to file an answer to the Amended Complaint with respect to Plaintiff's claims under GBL §§ 349 and 350 involving the use of the word "graham" on or before April 18, 2022. The Court moreover DIRECTS the parties to confer and jointly complete and file a Case Management Plan and Scheduling Order (blank form attached hereto) by March 31, 2022. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Paul E. Davison for general pretrial purposes. The parties shall contact Judge Davison within seven (7) business days of the date of the Order of Reference to schedule a conference.

The Clerk of Court is directed to terminate the motion at ECF No. 18.

Dated: March 16, 2022
       White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                                   Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                              Plaintiff(s),          **AND SCHEDULING ORDER**

          - against -


                              Defendant(s).     _____ CV _____ (NSR)


------------------------------------------------------------x

 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a
      Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties
      are free to withhold consent without adverse substantive consequences.  (If all parties
      consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto
      shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3
      [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
      _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held
            until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party
            depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:   White Plains, New York
         _____

                                        _____
                                        Nelson S. Román, U.S. District Judge